UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

| | |
|---|---|
| JAMES GOMEZ,<br><br>            Plaintiff,<br><br>  -against-<br><br>THE CITY OF NEW YORK, DENNIS EASTWICK,<br>DENNIS MUNGE, and GEORGE SANTANA,<br>individually and in their official capacity as employees of<br>the New York City Police Department,<br><br>            Defendants. | **DEFENDANTS'**<br>**STATEMENT ON MOTION**<br>**FOR SUMMARY**<br>**JUDGMENT PURSUANT TO**<br>**LOCAL RULE 56.1**<br><br>05 Civ. 2147 (GBD) (JCF) |

------------------------------------------------------------------------ x

  Pursuant to Local Rule 56.1 of this Court, defendants City of New York, Police Officer Dennis Estwick (sued herein as "Dennis Eastwick"), Police Officer Dennis Munge, and Police Officer George Santana respectfully submit this statement of material facts as to which they contend there is no genuine issue to be tried.

  1. On July 5, 2004, at approximately 6:00 p.m., defendants Officer Estwick, Officer Munge, and Officer Santana were patrolling the area around Clinton Street and Stanton Street in Manhattan as part of their assignment with the gang unit in the PSA 4 Precinct of the New York City Police Department. (See Deposition transcript of Dennis Estwick dated March 29, 2006, pp. 12, 17, 41 attached as Exhibit "A" to the Declaration of Hillary A. Frommer, hereinafter the "Frommer Declaration;" deposition transcript of George Santana dated March 30, 2006, pp. 11, 28 attached as Exhibit "B" to the Frommer Declaration; deposition transcript of Dennis Munge dated March 31, 2006, pp. 13, 26 attached as Exhibit "C" to the Frommer Declaration).

2. Officers Estwick, Santana, and Munge were dressed in plain or civilian clothes and each wore his police shield around his neck. (See Exhibit A, pp. 28-29, Exhibit C, pp. 62-63).

3. The officers were observing that specific area as part of their patrol duties that day because they knew that the area around Clinton and Stanton Streets was a drug-prone location. (See Exhibit A, pp. 41, 49; Exhibit B, p. 30).

4. Officer Estwick knew the area was drug prone because prior to July 5, 2005, he had effectuated numerous narcotics related arrests at the corner of Clinton and Stanton Streets. (See Exhibit A, p. 49).

5. While conducting their observations from the police vehicle, Officer Estwick and Officer Munge observed plaintiff standing at the corner of Clinton and Stanton Streets. (See Exhibit A, p. 43; Exhibit B, pp. 39-40).

6. Plaintiff admits that, at approximately 6:00 p.m., he was standing on the corner of Clinton and Stanton Street by himself. (See Deposition transcript of James Gomez dated April 3, 2006, p. 36 attached as Exhibit "D" to the Frommer Declaration).

7. Plaintiff admits that while he was on the corner of Clinton and Stanton Streets he removed $130 in cash from his pants pocket and began to count it. (See Exhibit D, pp. 41-42).

8. Plaintiff also admits that he took a gum wrapper out of his pocket. (See Exhibit D, p. 42).

9. When he first observed plaintiff, Officer Estwick saw plaintiff holding a large amount of money in one hand and holding a small piece of tin paper in the other hand. (See Exhibit A, p. 44).

10. The items in plaintiff's hand drew Officer Estwick's attention to plaintiff. (See Exhibit A, p. 47).

11. Based on his experience as a police officer, Officer Estwick knew that people used small pieces of tin foil that resemble gun wrappers to roll and store drugs. (See Exhibit A, pp. 108-109, 144-145).

12. Officer Estwick communicated his observations of plaintiff to Officers Munge and Santana. (See Exhibit A, p. 49; Exhibit B, pp. 32-33).

13. Thereafter, the officers continued to watch plaintiff for approximately five to ten minutes (See Exhibit B, p. 46; Exhibit C, p. 51).

14. Officer Munge also saw plaintiff holding a wad of money in one hand and a small piece of tin foil like paper in the other hand. (See Exhibit C, p. 43).

15. Officer Munge also saw that plaintiff appeared to be rolling the tin paper in his hand. (See Exhibit C, p. 43).

16. Based on his knowledge and experience as a police officer, Officer Munge believed that plaintiff was acting in a suspicious manner and may have been engaged in narcotics related activities. (See Exhibit C, pp. 109-111).

17. Officer Santana observed plaintiff fidgeting with his hands pacing back and forth on the street. (See Exhibit B, p. 46).

18. Based on his experience as a police officer, Officer Santana knew individuals wrapped and sold marijuana in small pieces of tin paper. (See Exhibit C, p. 153).

19. Because of plaintiff's specific gestures, Officer Estwick and Officer Santana believed that plaintiff was in possession of marijuana. (See Exhibit A, p. 148; Exhibit B, pp. 38).

20. Because of plaintiff's actions. Officer Estwick decided that the officers should approach and question plaintiff to see if he was engaged in narcotics related activity. (See Exhibit A, pp. 49,128-129; Exhibit B, p. 163).

21. The officers reasonably believed that they had reasonable suspicion to approach and question plaintiff because of plaintiff's specific actions in the known drug-prone location (See Exhibit A, pp. 108, 148, 151).

22. The officers did not intend to arrest plaintiff at that point. (See Exhibit A, p. 149).

23. As Officer Munge and Officer Santana exited the police vehicle to approach plaintiff, they identified themselves to plaintiff by displaying their police shields visibly for plaintiff to see and by yelling "police, police." (See Exhibit A, p. 130; Exhibit B, pp. 167, 169; Exhibit C, pp. 50-51, 62).

24. Plaintiff admits that he saw two men approaching him on Clinton Street. (See Exhibit D, p. 45).

25. Plaintiff admits that he heard one of the men who approached him on the street say "police, police." (See Exhibit D, p, 70).

26. Plaintiff admits that he saw that one of the men who approached him was wearing a shield around his neck. (See Exhibit D, p. 67).

27. Making eye contact with plaintiff, Officer Santana also ordered plaintiff to show his hands. (See Exhibit B, pp. 114, 201).

28. Plaintiff did not comply with Officer Santana's orders but rather, backed away from the officers. (See Exhibit B, p. 201; Exhibit C, pp. 63, 159).

29. Officer Munge believed that plaintiff was trying to run away from him and Officer Santana. (See Exhibit C, pp. 63. 159).

4

30. Almost immediately, plaintiff then swung a closed fist at Officer Munge and Officer Santana. (See Exhibit B, p. 114-115; Exhibit C, p. 63).

31. At that point, the officers saw that plaintiff engaged in criminal activity. (See Exhibit A, pp. 113,150).

32. Officers Munge and Santana then took hold of plaintiff by his arms and tried to handcuff plaintiff behind his back. (See Exhibit B, pp. 121-122; Exhibit C, p. 72; Exhibit D, pp. 49-50).

33. Officer Estwick exited the van at that point to assist Officers Santana and Munge who were trying to place plaintiff in handcuffs. (See Exhibit A, pp. 77-79).

34. Plaintiff admits that he flailed his arms and tried to pull away from the officers. (See Exhibit C, p. 72; Exhibit D, p. 50).

35. Plaintiff struggled with the officers before the police were able to handcuff plaintiff. (See Exhibit B, pp. 137-138; Exhibit D, pp. 52-53).

36. Officer Estwick did not physically interact with plaintiff nor did he place the handcuffs on plaintiff. (See Exhibit A, pp. 80-81).

37. No police officer punched or kicked plaintiff at any time. (See Exhibit A, p. 150; Deposition transcript of Rafael Balbi dated January 3, 2007, attached as Exhibit "E" to the Frommer Declaration, p. 31).

38. After plaintiff was handcuffed, a pat-frisk of plaintiff was conducted for the safety of the officers. (See Exhiibt A, p. 95; Exhibit B, pp. 155-156; Exhibit C, pp. 93, 95).

39. The pat-frisk consisted of checking plaintiff's outer pockets to make sure that plaintiff did not possess any kind of weapon. (See Exhibit A, p. 95; Exhibit C, pp. 93-94; Exhibit D, p. 53).

40. Plaintiff was then transported to the PSA 4 Precinct. (See Exhibit C, p. 120; Exhibit D, p. 59).

41. During the ride to the precinct, plaintiff never asked for medical attention of any kind. (See Exhibit C, p. 180; Exhibit D, p. 75).

42. Plaintiff did not make any complaints to the officers at all while being transported to the precinct. (See Exhibit C, p. 121; Exhibit D, p. 75).

43. Upon arriving at the precinct, plaintiff was immediately brought him before the precinct desk. (See Exhibit A, p. 55).

44. Officer Estwick informed the desk sergeant that plaintiff was a juvenile and brought plaintiff to the precinct juvenile room. (See Exhibit A, p. 56, 58; Exhibit B, p. 218).

45. Plaintiff did not appear to have any physical injuries of any kind while he was in the precinct. (See Exhibit A, pp. 65, 69).

46. Plaintiff admits that was not visibly bleeding at all while in the presence of the police on July 5, 2004. (See Exhibit D, p. 99; Exhibit E, p. 44).

47. Plaintiff admits did not sustain any broken bones nor did he require any stitches as a result of his interaction with the police. (See Exhibit D, p. 104).

48. Plaintiff did not sustain any cuts or bruises to his face as a result of his interaction with the police. (See Exhibit D, p. 105).

49. No strip search of any kind was performed on plaintiff. (See Exhibit A, pp. 105, Exhibit C, pp. 180-181; 110; Exhibit D, pp. 96-97).

50. Plaintiff's mother was called and informed that plaintiff was at the precinct. (See Exhibit A, p. 58).

51. Plaintiff remained in the juvenile room until his mother arrived at the precinct shortly after she was called. (See Exhibit A, p. 58).

52. Plaintiff was then released to his mother's custody and he left the precinct. (See Exhibit C, p. 171).

53. Plaintiff was not charged with any crime. (See Exhibit C, p. 171).

54. Plaintiff departed the following morning on July 6, 2004 for the Dominican Republic. (See Exhibit D, p. 120).

55. Plaintiff did not seek or obtain any medical treatment after he returned from the Dominican Republic. (See Exhibit D, p.120).

56. Plaintiff did not miss any work or school as a result of his interaction with the police on July 5, 2004. (See Exhibit D, pp. 125-126).

Dated: New York, New York
March 22, 2007

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants City, Estwick, Munge, and Santana
100 Church Street
Room 3-212
New York, New York 10007
(212) 788-0823

By: _____
Hillary A. Frommer (HF9286)
Senior Counsel