```
UNITED STATES DISTRICT COURT_____    (ECF)___
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JAMES GOMEZ,                          :   05 Civ. 2147 (GBD)(JCF)
                                      :
              Plaintiff,              :
                                      :        REPORT AND
         - against -                  :      RECOMMENDATION
                                      :
THE CITY OF NEW YORK, DENNIS          :
EASTWICK, DENNIS MUNGE, and           :
GEORGE SANTANA, individually and      :
in their official capacity as         :
employees of the New York City        :
Police Department,                    :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - -
TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J:
```

The plaintiff, James Gomez, brings this action pursuant to 42
U.S.C. § 1983 against the City of New York and New York City Police
Department ("NYPD") Officers Dennis Estwick (named in the Amended
Complaint as "Dennis Eastwick"), Dennis Munge, and George Santana,
alleging that the defendants violated his constitutional rights and
state law in connection with his arrest.  The defendants now move
for summary judgment on all claims pursuant to Rule 56 of the
Federal Rules of Civil Procedure.  For the following reasons,  I
recommend that the motion be granted in part and denied in part.

<u>Background</u>

At approximately 5:15 p.m. on July 5, 2004, the plaintiff was
standing at the corner of Clinton and Stanton Streets in Manhattan
when two plainclothes officers emerged from an unmarked car and
confronted him.  (First Amended Complaint ("Am. Compl."), ¶ 16;
Deposition of James Gomez dated April 3, 2006 ("Gomez Dep."),
attached as Exh. 1 to Declaration of Ben Currie dated May 24, 2007

1

("Currie Decl."), attached in turn to Plaintiff James Gomez's Statement Pursuant to Local Rule 56.1 in Response and Opposition to Defendants' Motion for Summary Judgment, at 32-33, 45-48). The plaintiff had been waiting for his sister, Gisela Gomez, who had stopped inside a salon on Clinton Street. (Gomez Dep. at 32-33, 36; Transcript of Hearing Pursuant to N.Y. Gen. Mun. Law § 50-h dated Dec. 8, 2004 ("50-h Tr."), attached as Exh. 2 to Currie Decl., at 8). Prior to his encounter with the police, Mr. Gomez had taken out from his pocket one hundred and thirty dollars that he planned to use to purchase new sneakers. (Gomez Dep. at 41-42). While counting the cash, he discovered a gum wrapper among the bills, which he left with the money. (Gomez Dep. at 42). Believing that his actions suggested that Mr. Gomez might be engaged in narcotics-related activity, the defendants exited their vehicle to question him. (Deposition of Dennis Estwick dated March 29, 2006 ("Estwick Dep."), attached as Exh. 3 to Currie Decl. and Exh. A to Declaration of Hillary A. Frommer dated March 22, 2007 ("Frommer Decl."), at 44, 47-49; Deposition of Dennis Munge dated March 31, 2006 ("Munge Dep."), attached as Exh. 4 to Currie Decl. and Exh. B to Frommer Decl., at 108-11; Deposition of George Santana dated March 30, 2006 ("Santana Dep."), attached as Exh. 5 to Currie Decl. and Exh. C to Frommer Decl., at 164-65).

The officers who confronted Mr. Gomez were members of an NYPD gang unit. Officers Santana and Munge were the first to approach him. (Munge Dep. at 50-51, 61). Officer Estwick, who had more experience with the gang unit and was driving the van (Estwick Dep.

at 18-25), initially remained behind.  (Munge Dep. at 60-61).  The officers, who were in plain clothes, represent that as they exited the vehicle their police shields were visible, hanging from their necks, and they shouted "police, police."  (Estwick Dep. at 130; Munge Dep. at 53-54, 62-63; Santana Dep. at 168-71).  The plaintiff states that he did not hear the officers identify themselves as police and that he therefore thought that he was being robbed.  (Gomez Dep. at 48-53; 50-h Tr. at 30).  Consequently, when the officers grabbed his arms, he tried to pull himself free.  (Gomez Dep. at 49-50).  He was soon overcome by the officers and pushed to the ground face-first.  (Gomez Dep. at 51).  At some point during the struggle, Officer Estwick left the vehicle to assist the other officers in handcuffing the plaintiff.  (Gomez Dep. at 66; Estwick Dep. at 79-81).  The plaintiff was then placed against the van while the officers conducted a pat frisk.  (Estwick Dep. at 95; Munge Dep. at 93-95; Santana Dep. at 156-58).  The plaintiff testified that the officers actually searched inside his pockets at that point.  (Gomez Dep. at 53).

The officers then brought the plaintiff back to the precinct for processing.  (Munge Dep. at 120).  The plaintiff alleges that, before proceeding inside, the officers patted down his legs and opened the zipper of his pants and looked inside for drugs.  (Gomez Dep. at 85-86).  The officers then handcuffed Mr. Gomez to a bar in the precinct's "juvenile room" and contacted his mother, since the plaintiff was 15 years old at the time.  (Estwick Dep. at 58-59).  When his mother arrived, she noticed that his clothes were wet and

that he had small cuts and scratches on his arms and hands. (Affidavit of Gisela DeLaCruz dated May 22, 2007, attached as Exh. 14 to Currie Decl., ¶ 4). He was released into the custody of his mother and not charged with any crime. (Munge Dep. at 170-71). The plaintiff was subsequently treated at Bellevue Hospital Center for his injuries. These included an abrasion on the right side of his face, bruises on his left shoulder and wrist, and superficial abrasions on his elbows, hands, and left knee. (Bellevue Medical Record dated July 5, 2004, attached as Exh. 6 to Currie Decl., at 2-3, 6). The plaintiff testified that his injuries took approximately one week to heal. (Gomez Dep. at 109, 120). He also alleges that he suffered humiliation and psychological injury that affected his schoolwork. (Gomez Dep. at 124-27).

Mr. Gomez commenced the instant action against the three officers and the City of New York on February 15, 2005, alleging eight causes of action: state and federal constitutional violations for unlawful search and seizure, federal constitutional violations for excessive force and failure to intervene, and state law claims for assault, battery, false imprisonment, and negligence. An Amended Complaint was filed on April 8, 2005. Following the completion of discovery, the defendants moved for summary judgment on all claims. The plaintiff subsequently withdrew his claim for unlawful search and seizure under the New York Constitution, his constitutional claim for failure to intervene, and his state law negligence claim. (Plaintiff's Memorandum of Law Opposing Defendants' Summary Judgment Motion ("Pl. Memo.") at 1).

Discussion

A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the evidence offered demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 486-87 (2d Cir. 2006); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex, 477 U.S. at 322-23, 325.  Where the moving party meets that burden, the opposing party must "set out specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  A nomovant opposing summary judgment may not simply rely on the assertions in the pleadings, but must, "by [his] own affidavits, or . . . 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing whether the nonmoving party has presented evidence sufficient to raise a genuine issue of material fact, the court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, "[t]he litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga, 51 F.3d at 18 ("party opposing summary judgment may not rely simply on conclusory statements"). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

    B.   Unlawful Search and Seizure

        1.   Stop Pursuant to Reasonable Suspicion

The defendants argue that their decision to stop and question the plaintiff was proper because it was justified by reasonable suspicion. (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Memo.") at 7-10).

It is well-established that the police may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Solokow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). The standard for a Terry stop requires that an officer "articulate something more than an inchoate and unparticularized suspicion or hunch." Id. (internal quotation marks and citation omitted). In determining whether the officer had reasonable suspicion at the time of the stop, a court must look to the "totality of the circumstances" upon which the stop was based. United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006). Moreover, individual instances of conduct that would not alone constitute reasonable suspicion may satisfy the reasonable suspicion threshold when taken in the aggregate. United States v. Sharpe, 470 U.S. 675 at 683 n.3 (1985). While the inquiry into reasonable suspicion is an objective one, Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir. 2005), officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." United States v. Arvizu, 534 U.S. 266, 273 (2002).

The defendants in this case point to several facts to support their assertion that there was reasonable suspicion that the plaintiff was engaged in drug-related activity. First, the plaintiff was counting a noticeable amount of cash on the sidewalk

at a location where Officer Estwick had previously arrested approximately 20 people for selling narcotics. (Estwick Dep. at 49). Second, Officers Estwick and Munge saw the plaintiff handling a gum wrapper that, according to them, resembled aluminum foil typically used to package drugs. (Estwick Dep. at 108-09; Munge Dep. at 43). Officers Munge and Santana also noted that the plaintiff appeared fidgety and was pacing. (Munge Dep. at 110; Santana Dep. at 47-48).

While an individual's presence at a particular location is not sufficient in itself to establish reasonable suspicion, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). For purposes of a Terry stop, the defendants were thus permitted to consider the fact that the plaintiff was in an area where Officer Estwick had made a substantial number of drug arrests.

The plaintiff asserts that he did not handle the gum wrapper in a suspicious manner, but simply left it with his money. (Gomez Dep. at 42). Nor did he pace. (Gomez Dep. at 49). On a motion for summary judgment, the evidence must be viewed in the light most favorable to the plaintiff. Anderson, 477 U.S. at 255. However, even if the officers only saw the plaintiff standing in a known drug location counting a noticeable amount of cash and holding a piece of foil similar to that used to package narcotics, they would have had sufficient cause to inquire further. See United States v.

_Alexander_, 907 F.2d 269, 272 (2d Cir. 1990) (finding reasonable suspicion where defendant parked his car in a "drug ridden neighborhood," looked around as he left the vehicle, and returned 25 minutes later carrying a brown paper bag); _United States v. Cortez_, 449 U.S. 411, 418 (1981) (officers are permitted to consider "the modes or patterns of operation of certain kinds of lawbreakers[.]"). Accordingly, the plaintiff's Fourth Amendment claim with respect to the officers' initial effort to stop and question him should be dismissed.

### 2. <u>Arrest and Search Pursuant to Probable Cause</u>

Next, the defendants argue that their arrest and search of the plaintiff was lawful because it was supported by probable cause. Specifically, they assert that the plaintiff's failure to comply with the officers' orders and his resistance to their efforts to detain him gave rise to probable cause to arrest him for disorderly conduct. (Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Reply Memo.") at 6-7; Estwick Dep. at 131-32, Munge Dep. at 172; Santana Dep. at 207-10).

A claim for false arrest under § 1983 rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including the right not to be arrested without probable cause. In New York, a § 1983 claim is analyzed under "substantially the same" elements as for a claim for false arrest under state law. _Posr v. Doherty_, 944 F.2d 91, 96 (2d Cir. 1991) (quoting _Raysor v. Port Authority of New York and New Jersey_, 768 F.2d 34, 39-40 (2d Cir. 1985); _see also_ _Davenport v. County of_

Suffolk, No. 99-CV-3088, 2007 WL 608125, at *4 (E.D.N.Y. Feb. 23, 2007). The plaintiff must show that: (1) he was intentionally confined; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not privileged. Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)). Probable cause constitutes a complete defense to a claim for false arrest. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."). However, where the arrest is made without a warrant, the government bears the burden of establishing probable cause. See Wu v. City of New York, 934 F. Supp. 581, 586 (S.D.N.Y. 1996). In general, probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been [or is being] committed by the person to be arrested.'" O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)). Courts reviewing an officer's assertions of probable cause "must consider those facts available to the officer at the time of arrest and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

As discussed above, the defendants claim that as they approached the plaintiff, Officers Munge and Santana had their

shields visible and identified themselves as police officers. (Estwick Dep. at 130; Munge Dep. at 53-54, 62-63; Santana Dep. at 168-71). They say that as they approached they ordered the plaintiff not to move and to show his hands. (Munge Dep. at 159; Santana Dep. at 115, 202). According to the defendants, before they had a chance to ask any questions, the plaintiff backed away and attempted to strike them with his fist. (Munge Dep. at 63; Santana Dep. at 116). The plaintiff, however, gives a different account of what transpired. He claims that he did not know that his assailants were police officers. Indeed, the officers testified that when he was grabbed, Mr. Gomez repeatedly shouted, "You're not cops." (Munge Dep. at 78). While he had reported to investigators that he heard someone say, "Police, police," he testified in his deposition that he had said so because one of the officers told him afterwards that they had yelled "police, police" before they grabbed him. (Gomez Dep. at 70, 74). Similarly, the plaintiff did not see any officer wearing a shield around his neck until after he was handcuffed. (Gomez Dep. at 67; IAB Interview Notes, attached as Exh. 10 to Currie Decl., at 4). He acknowledges that he attempted to pull himself free after the officers grabbed his arms (Gomez Dep. at 49-52), but denies backing away or attempting to hit anyone. (Gomez Dep. at 49; Affidavit of James Gomez dated May 23, 2007 ("Gomez Aff."), attached as Exh. 15 to Currie Decl., ¶ 7).

Thus, taking the evidence in the light most favorable to the plaintiff, he only resisted the officers' efforts to detain and

handcuff him and did not attempt to flee from or assault the officers before they made contact. As the defendants point out, courts have held that a suspect's retreat from officers attempting to question him may itself transform reasonable suspicion into probable cause to arrest. See United States v. Baldwin, 496 F.3d 215, 219-20 (2d Cir. 2007) (unprovoked flight in response to even an unreasonable order to stop may give rise to probable cause); United States v. Martinez-Gonzalez, 686 F.2d 93, 99-100 (2d Cir. 1982) (finding probable cause where defendant reacted to agents displaying their badges and walking toward him at a normal pace by hastily retreating). However, in this case, the defendants have not established that the plaintiff had any chance to back away or retreat before the officers made physical contact with him. More importantly, there remain questions of fact as to whether the officers reasonably believed that the plaintiff knew that they were police and therefore actively resisted their authority.[1] Because the officers here were in plain clothes and it is disputed whether they announced themselves or displayed their shields as they approached, and because the plaintiff exhibited clear disbelief that they were police, a jury could find that they lacked probable

---

[1] For this inquiry, the relevant facts include what efforts were made by the defendants to identify themselves and what outward manifestations of disbelief were displayed by the plaintiff. The plaintiff's subjective belief about whether the defendants were in fact police officers is not relevant. See Lovelace v. City of New York, No. 02-CV-5398, 2005 WL 552387, at *2 (E.D.N.Y. March 9, 2005) (probable cause does not lie "in the subjective intentions of the arrestee," but in "'the facts available to the officer at the time of the arrest'" (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)).

cause to arrest Mr. Gomez. See Sutton v. Duguid, No. 05-CV-1215, 2007 WL 1456222, at *8 (E.D.N.Y. May 16, 7007) (denying summary judgment because jury could find that defendants did not put plaintiff on reasonable notice that they were police officers); Hamlett v. Town of Greenburgh, No. 05-CV-3215, 2007 WL 119291, at *5 (S.D.N.Y. Jan. 17, 2007) (denying summary judgment on false arrest for disorderly conduct claim where there was an issue of material fact as to whether officer acted reasonably to identify himself). Probable cause may only "be determin[ed] as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Accordingly, it would be inappropriate to dismiss the plaintiff's false arrest claim at this stage.

As to the search that was conducted, the parties also present differing versions of the facts. The defendants claim that they only pat frisked the plaintiff. (Estwick Dep. at 95; Munge Dep. at 93-95; Santana Dep. at 155-58). The plaintiff alleges, however, that they did not simply frisk him, but searched him intrusively twice for drugs. (Gomez Dep. at 53, 85-86). To pat frisk the plaintiff for weapons and other dangerous instruments, the officers would only have needed reasonable suspicion. Terry, 392 U.S. at 30-31. However, a search incident to an arrest would have required probable cause. Because there exist questions of fact as to whether probable cause existed to arrest the plaintiff, his Fourth Amendment claim with respect to the search should likewise not be dismissed.

C.  Excessive Force

The defendants also challenge the plaintiff's excessive force claim on grounds that (1) the plaintiff's injuries were de minimis, (2) the force exercised by Officers Munge and Santana was reasonable under the circumstances, and (3) the claim against Officer Estwick should be dismissed because he was not personally involved in apprehending the plaintiff.  (Def. Memo. at 13-18; Def. Reply Memo. at 7-9).

As a threshold matter, in order to sustain a claim for excessive force, the plaintiff must generally establish that the force applied was more than de minimis.  See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) ("[A] de minimis use of force will rarely suffice to state a constitutional claim.").  However, to survive summary judgment, the plaintiff need not show that the injury was severe or permanent.  See Maxwell v. City of New York, 380 F.3d 106, 108-09 (2d Cir. 2004) (reversing district court's dismissal of excessive force claim where plaintiff alleged shoulder pain and a scrape to her forehead); Robison v Via, 821 F.2d 913, 924-25 (2d Cir. 1987) (finding that plaintiff who suffered only bruises lasting "a couple weeks" was entitled to submit excessive force claim to jury); Pierre-Antione v. City of New York, No. 04 Civ. 6987, 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006) (declining to dismiss excessive force claim though "medical evidence [made] it less likely that [plaintiff could] prevail at trial because it does not reveal any severe injury"); but cf. Rincon v. City of New York, No. 03 Civ. 8276, 2005 WL 646080, at *4-5 (S.D.N.Y. Mar. 21, 2005)

(granting summary judgment where plaintiff was treated only for swelling in right leg and wrist despite having alleged that the force of being thrown to the ground caused "the stitches on her leg [to] split open"); <u>Cunningham v. Rodriguez</u>, No. 01 Civ. 1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (determining injuries to be de minimis where plaintiff only complained of neck, shoulder, and back pain one week after incident and had no other medical findings).

Here, though the plaintiff's alleged injuries may not have been severe, they were not so superficial as to warrant dismissal as a matter of law. Medical records from Bellevue Hospital indicate that he suffered multiple abrasions and bruises on his face, shoulder, elbows, wrist, and knee that lasted approximately one week. The law does not require that a plaintiff be bleeding or in need of immediate medical attention to maintain a cause of action for excessive force. Mr. Gomez's injuries were at least comparable to those in <u>Maxwell</u> and <u>Robison</u>; thus, summary judgment should not be granted on this basis.

Next, the court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake" to determine whether the force applied was objectively reasonable. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)). A proper application of this test involves consideration of the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Hemphill v. Schott, 141 F.3d 412, 417 (2d Cir. 1998) (citing Graham, 490 U.S. at 396). Furthermore, the reasonableness of the officers' actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; see also Johnson v Glick, 481 F. 2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even it if it may later seem unnecessary in the peace of the judge's chambers, violates [] constitutional rights."). This analysis must be conducted even though I have determined that factual questions remain as to whether Mr. Gomez's arrest was supported by probable cause. See Jones v. Parmley, 465 F.3d 46, 61-63 (2d Cir. 2006) (clarifying that all claims of excessive force under § 1983 should be governed by the reasonableness standard set forth in Graham, regardless of whether there exists a lawful basis for arrest).

The defendants claim that the force they applied was initially appropriate in light of the plaintiff's attempt to strike them and flee and continued to be necessary because he refused to remain still. (Def. Memo. at 16). The defendants testified that they only intended to take hold of the plaintiff's arms and control him so that the handcuffs could be applied. They did not push him to the ground; rather, the officers and plaintiff fell to the ground when they tripped. Officer Munge stated that they tripped over the curb, while Officer Santana testified that he tripped on a step in

16

front of a store where the confrontation took place. (Munge Dep. at 72-76; Santana Dep. at 119-25). The plaintiff, on the other hand, claims that he was "slammed on the floor" and contends that no one could have tripped on a step because there was no step on the sidewalk where the incident occurred. (Gomez Dep. at 51; Pl. Memo. at 14; Gomez Aff., ¶ 3). He acknowledges that he did try to break free from the officers' grip, but not until after they made contact. (Gomez Dep. at 49-52).

Officers Munge and Santana were certainly permitted to exercise some force, especially where, as here, the plaintiff actively resisted their efforts to subdue him. See Graham, 490 U.S. at 396; Johnson v. Police Officer #17969, No. 00 Civ. 3964, 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (reasonable for officer to use some force where plaintiff resisted arrest). However, the amount of force used must still have been reasonably necessary under the circumstances. See Curry v. City of Syracuse, 316 F.3d 324, 333-34 (2d Cir. 2003). If the plaintiff did not attempt to strike the officers or run away, and if the officers did in fact throw the plaintiff onto the ground, a jury could find that such force was not justified. Because there remain questions of fact that are relevant to a determination of whether that force was reasonable, summary judgment on this basis is not warranted. Id. (reversing grant of summary judgment on excessive force claim where parties' accounts of the facts differed markedly); Welch v. City of New York, No. 95 Civ. 8953, 1997 WL 436382, at *6 (S.D.N.Y. Aug. 4, 1997) (same).

Finally, the defendants argue that the plaintiff's excessive force claim against Officer Estwick must be dismissed because he was not personally involved in physically apprehending the plaintiff. (Def. Memo. at 17-18). In order to obtain an award of damages against a defendant under § 1983, the plaintiff must show that the defendant personally "subject[ed], or cause[d] [the plaintiff] to be subjected" to the deprivation of a federal right. 42 U.S.C. § 1983; see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Here, the record is not clear as to what force Officer Estwick exerted. He certainly exited the vehicle at some point to assist the other officers (Estwick Dep. at 79-80), and may have grabbed one of the plaintiff's arms when he was on the ground (Santana Dep. at 129-30) or applied the handcuffs to him (Estwick Dep. at 80-81; Santana Dep. at 135-36), or both. Because the medical records indicate that the plaintiff suffered bruises on his left shoulder and wrist, it is at least arguable that Officer Estwick's actions contributed to the plaintiff's injuries. While a routine handcuffing alone is not adequate to sustain an excessive force claim, Stokes v. City of New York, No. 05-CV-0007, 2007 WL 1300983, at *12 (E.D.N.Y. May 3, 2007), courts may permit such a claim where (1) the handcuffs were unreasonably tight, (2) the plaintiff's complaints were ignored, or (3) the plaintiff suffered some injury to his wrists. See Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005); Vogeler v. Colbath, No. 04 Civ. 6071, 2005 WL 2482549, at *9-10 (S.D.N.Y. Oct. 6, 2005). The plaintiff's

bruises are sufficient to show injury; thus, Officer Estwick is not entitled to summary judgment on this basis.

      D. Qualified Immunity for Federal Claims

The defendants argue that even if the Court declines to dismiss the plaintiff's constitutional claims on their merits, they are entitled to summary judgment on the basis of qualified immunity. (Def. Memo. at 20-21).

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). However, government officials are protected from liability only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. As a threshold matter, a court must determine whether the facts, when viewed in the light most favorable to the plaintiff, "show [that] the officer's conduct violated a constitutional right[.]" Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, the court must then examine "whether the right was clearly established." Id. Even where a plaintiff's federal rights are well-defined, and the boundaries of official conduct clearly established, qualified immunity will protect a government actor so long as it was "'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged

act." Lennon, 66 F.3d at 420 (quoting Anderson v. Creighton, 483
U.S. 635, 641 (1987)); accord Robison, 821 F.2d at 921; see also
Moore v. Vega, 371 F.3d 110, 114-15 (2d Cir. 2004); Tierney v.
Davidson, 133 F.3d 189, 196 (2d Cir. 1998); Golino v. City of New
Haven, 950 F.2d 864, 870 (2d Cir. 1991).

It was clearly established at the time of Mr. Gomez's arrest
that the Fourth Amendment right to be free from unreasonable
seizure includes the right to be free from arrest without probable
cause. Jaegly v Couch, 439 F.3d 149, 151 (2d Cir. 2006) (citing
Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). In analyzing
whether an arresting officer is entitled to qualified immunity in
the context of a suit alleging that the arrest was not supported by
probable cause, a court must determine whether (1) "it was
objectively reasonable for the officer to believe that probable
cause existed," or (2) "officers of reasonable competence could
disagree on whether the probable cause test was met." Posr v.
Court Officer Shield No. 207, 180 F.3d 409, 416 (2d Cir. 1999)
(quoting Golino, 950 F.2d at 870). This standard has also been
referred to as "arguable probable cause." Cerrone v. Brown, 246
F.3d 194, 202-03 (2d Cir. 2001). The same reasoning applies to an
investigatory stop based on reasonable suspicion. Sutton, 2007 WL
1456222, at *6; see also Harris v. Wydra, 531 F. Supp. 2d 233, 242
(D. Conn. 2007) (granting summary judgment on qualified immunity
grounds upon determining that officer had at least "arguable
reasonable suspicion").

In this case, the defendants assert that they had reasonable suspicion to detain the plaintiff because they saw him in a known drug location with cash and a piece of foil in his hand. Even if the Court were to find that this was not sufficient to constitute reasonable suspicion, officers of reasonable competence might surely disagree. Thus, the defendants would be entitled to qualified immunity. With respect to the arrest, however, there remain genuine issues of material fact that preclude a finding of even arguable probable cause. If the plaintiff stood still on the corner as the officers approached, resisting only after having been grabbed, and the officers had not fairly identified themselves to the plaintiff as police, it would not have been reasonable for the officers to assume there was probable cause to arrest him.

Regarding the application of qualified immunity to excessive force claims, the Supreme Court has held that, notwithstanding the reasonableness assessment already inherent in the Graham test, "[t]he inquiries for qualified immunity and excessive force remain distinct." Saucier, 533 U.S. at 204. Thus, the district court must first evaluate the constitutional claim on the merits, and if excessive force is found, then determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Cowan v. Breen, 352 F.3d 756, 761 (2d Cir. 2003) (quoting Saucier, 533 U.S. at 202). While qualified immunity adds a further dimension to the deference afforded to police officers, the inquiry remains fact-specific. See Swift v. Mauro, No. 5:04-CV-0899, 2008 WL 207793, at *6 (N.D.N.Y. Jan. 24,

2008).  Accordingly, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Kerman v City of New York, 261 F.3d 229, 240 (2d Cir. 2001) (quoting Thomas v. Rouch, 165 F.3d 137, 143 (2d Cir. 1998)); see also Curry, 316 F.3d at 334 (factual disputes "as to the degree of force actually employed and its reasonableness" preclude dismissal on qualified immunity grounds).

Here, the degree of force employed by the defendants in bringing the plaintiff to the ground and the plaintiff's actions purportedly justifying that degree of force are in dispute.  Any assessment of whether the officers made a reasonable mistake "as to what the law require[d]" in the situation they confronted will turn on the jury's determination of what that situation was. Saucier, 533 U.S. at 206; Cowan, 352 F.3d at 764 (noting that outstanding factual disputes should be submitted to the jury before court decides issue of qualified immunity).  The same lack of clarity exists with respect to the degree of force employed by Officer Estwick in applying the handcuffs.  Thus, dismissal on qualified immunity grounds would be premature. See Swift, 2008 WL 207793, at *7 (denying summary judgment on qualified immunity grounds where plaintiff alleges officers struck him before he had opportunity to resist arrest and plaintiff's subsequent efforts were for the purpose of defending himself); Post v. Elser, No. 92-CV-1146, 1996 WL 406843, at *8 (N.D.N.Y. July 19, 1996) (denying summary judgment on qualified immunity grounds where plaintiff claims officers "took

him to the ground face down" and handcuffed him even though plaintiff did not resist arrest); but cf. Massaro v. Town of Trumbull, 525 F. Supp. 2d 302, 308-09 (D. Conn. 2007) (granting qualified immunity where plaintiff was pushed to the ground and handcuffed because he delayed in complying with officers' orders to open the door).

     E.  <u>State Law Claims</u>

The defendants contend that the plaintiff's state law claims for assault and battery should be dismissed because the force exercised by the defendants was reasonably necessary to carry out a lawful arrest. (Def. Memo. at 22-23). They further contend that they are entitled to immunity under common law on all of the plaintiff's state law claims. (Def. Memo. at 23-24).

The plaintiff's state law claims are apparently asserted against the individual officers and, on a respondeat superior theory, against the City of New York. (Pl. Memo. at 20). New York has waived the City's immunity for claims under state law. See Jenkins v. City of New York, 478 F.3d 76, 95 n.21 (2d Cir. 2007) (citing N.Y. Ct. Cl. Law § 8). There is no dispute here that the arrest took place while the officers were on duty and the defendants have not argued that the officers were otherwise acting outside the scope of their employment; thus, these claims may proceed. See Webster v. City of New York, 333 F. Supp. 2d 184, 207 (S.D.N.Y. 2007) (granting summary judgment on plaintiffs' § 1983 claim against the City but permitting state law claims to survive); cf. DeVito v. Barrant, No. 03-CV-1927, 2005 WL 2033722, at *7

(E.D.N.Y. Aug. 23, 2005) ("[A]n employer may be held liable based on a theory of respondeat superior only where an employee was engaged in the furtherance of the employer's enterprise.").

       1.  <u>Assault and Battery</u>

New York law regarding assault and battery generally parallels federal law regarding excessive force.  <u>Kramer v. City of New York</u>, No. 04 Civ. 106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004).  A civil assault is defined as "an intentional placing of another person in fear of imminent harmful or offensive contact," while a battery is "an intentional wrongful physical contact with another person without consent."  <u>Charkhy v. Altman</u>, 252 A.D.2d 413, 414, 678 N.Y.S.2d 40, 41 (1st Dep't 1998) (quoting <u>United National Insurance Co. v. Waterfront New York Realty Corp.</u>, 994 F.2d 105, 108 (2d Cir. 1993)).  Where an arrest is supported by probable cause, an officer will not be liable under theories of assault and battery for the "use [of] physical force when and to the extent she or he reasonably believes [it is] necessary to effect the arrest." <u>Lederman v. Adams</u>, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999) (quoting N.Y. Penal Law § 35.30(1)); <u>see also</u> <u>Cunningham v. United States</u>, 472 F. Supp. 2d 366, 383 (E.D.N.Y. 2007); <u>Wyllie v. District Attorney of County of Kings</u>, 2 A.D.3d 714, 718-19, 770 N.Y.S.2d 110, 114 (2d Dep't 1996).  However, where "an arrest is determined to be unlawful, <u>any</u> use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." <u>Sulkowska v. City of New York</u>, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001)

(emphasis added) (citing Johnson v. Suffolk County Police Department, 245 A.D.2d 340, 341, 665 N.Y.S.2d 440, 440-41 (2d Dep't 1997) (holding that police officer committed battery where he merely touched plaintiff during unlawful arrest)); see also Kramer, 2004 WL 2429811, at *11; L.B. v. Town of Chester, 232 F. Supp. 2d 227, 238 (S.D.N.Y. 2002).

        In Mr. Gomez's case, as discussed above, there remain disputed issues of fact that are relevant to a determination of whether the force used by all three officers was reasonable under the circumstances.   Even if the officers' conduct was reasonably necessary to carry out the arrest, however, under state law unresolved questions about the existence of probable cause preclude summary judgment on the plaintiff's assault and battery claims. Dismissal is therefore not appropriate.

            2.   State Law Immunity

        The defendants also argue that they are protected from liability under state common law because the officers were exercising the discretion inherent in their jobs.   (Def. Memo. at 23-24).

        Under New York law, governmental immunity generally attaches "when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial." Haddock v. City of New York, 75 N.Y.2d 478, 484, 554 N.Y.S.2d 439, 443 (1990).   This doctrine is grounded in the view that government officers and employees should be free to exercise judgment in carrying out their official duties "unhampered by fear of second-

guessing and retaliatory lawsuits." Id. While it is true that in effecting an arrest, a police officer must exercise some discretion, the routine duties of police officers are not subject to the same level of immunity afforded to high-level decisionmakers. See Jones v. State, 33 N.Y.2d 275, 279, 352 N.Y.S.2d 169, 172 (1973) ("A long line of cases has held the State or municipalities liable for the actions of their police officers in the line of duty."). New York has treated the actions of police officers similar to the way they are treated under federal law: immunity will shield the officers and their employer from liability as long as the conduct was reasonable. See Jones v. Parmley, 465 F.3d at 63 (holding that defendant officers were entitled under New York law to "qualified immunity on state-law claims except where [their] actions are undertaken in bad faith or without a reasonable basis"); cf. Arteaga v. State of New York, 72 N.Y.2d 212, 217 n.1, 219-20, 532 N.Y.S.2d 57, 60 n.1, 61 (1988) (distinguishing corrections officials from police officers "who under established law are entitled only to qualified immunity"); Arias v. City of New York, 22 A.D.3d 436, 437, 802 N.Y.S.2d 209, 211 (2d Dep't 2005) ("[I]mmunity extends to the actions of police officers engaged in law enforcement activities provided that the officers' actions are not inconsistent with acceptable police practice.") (citations omitted).

As discussed above, there remain disputed issues of fact relevant to a determination of whether the officers' had probable cause to arrest the plaintiff and whether the manner in which they

effected the arrest was reasonable. The Court is in no greater position to make a determination on the reasonableness of the defendants' conduct for purposes of the state claims than on the federal claims. Accordingly, the defendants are not entitled to summary judgment on state law immunity grounds for the false imprisonment, assault, and battery claims. See, e.g., Hayes v. City of Amsterdam, 2 A.D.3d 1139, 1141, 770 N.Y.S.2d 138, 140-41 (3d Dep't 2003) (declining to grant summary judgment on plaintiff's claim against municipality in light of factual dispute about reasonableness of officers' use of force).

## Conclusion

For the reasons stated above, I recommend that the defendants' motion for summary judgment be granted insofar as it seeks dismissal of the plaintiff's Fourth Amendment claim regarding the investigatory stop but denied in all other respects. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedural, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the George B. Daniels, U.S.D.J., Room 630, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

27

Dated:     New York, New York
           May 28, 2007

Copies mailed this date:

Neil Benham Currie, Esq.
Law Office of Matthew Flamm
26 Court Street, Suite 60000
Brooklyn, NY 11242

Hillary Ann Frommer, Esq.
Assistant Corporation Counsel
100 Church Street
New York, NY 10007